STATE, Respondent v. IRON SHELL, Appellant

(191 N.W.2d 803)

(File No. 10792. Opinion filed November 19, 1971)

**Ron Schmidt,** Pierre, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **C. J. Kelly,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

WINANS, Judge.

In the early evening hours of November 22, 1968, Mrs. Myrtle Wilhelm was on duty alone as night manager of Price's Motel in Rapid City, South Dakota. She was acting as registration clerk. At approximately 6:30 p. m. of that day two men entered the office of the motel. One of the men inquired for the use of the rest room and was told by Mrs. Wilhelm that the motel had no public rest room, but there was one in a filling station across the street. He turned and walked back toward the door. The other man, later identified by Mrs. Wilhelm as the defendant herein, stayed at the registration desk, laid his towel-wrapped hand on the desk and nodded toward the cash register and told Mrs. Wilhelm to give him everything in the cash register or he would blow her head off. She complied with such request and collecting the bills from the cash register handed them to him. He took the money and directed Mrs. Wilhelm to get down on the floor and stay there five minutes or he'd blow her head off. She got down on the floor and stayed there until she heard the office door close. She then telephoned Richard Price, the owner of the motel, and the Rapid City police what had occurred.

Police officers Schramm and Childs responded to the call within minutes and received from Mrs. Wilhelm a general description of the two robbers. The two officers then proceeded to the M & W Cabins one block east and across the street from the Price Motel, to enlist the aid of officer Preble in their investigation of the robbery. Officer Preble was investigating an attempted robbery of Bus'z Liquor Store on east North Street. From the liquor store he had gone to cabin #17 at the M & W Cabins and within minutes after arriving there the defendant and his com-

panion, Francis Stands, also arrived at the doorway of this cabin, both breathing heavily as if from running. Stands was observed by officer Preble removing an orange sweater and handing it to the defendant who put it on. He asked the two men for identification which Stands produced, but Iron Shell was unable to produce. Officer Preble observed that the defendant had a large lump of something in his pocket and upon inquiry, defendant removed a large roll of bills from his pocket. Defendant explained that he had been working and had earned the money, and replaced it in his pocket. Officers Schramm and Childs then arrived at cabin #17 and informed officer Preble that a bunch of bills was taken from Price's Motel and related a general description of the robbers, given them by Mrs. Wilhelm; this general description was consistent with the general appearance of defendants Iron Shell and Stands. Sergeant Preble asked them to accompany the officers to Price's Motel for possible identification as the robbers. At the motel Mrs. Wilhelm was asked whether she could identify the two men and responded, "yes, I could". The policemen then brought the men in and they were identified by Mrs. Wilhelm as "Those are the ones".

From the time of the robbery to the time of this identification approximately thirty minutes had elapsed. In the identifying process by Mrs. Wilhelm the two men were not required to talk, walk around the room or perform in any way, but were required to stand before the registration desk. Mrs. Wilhelm also made an in-court identification of the defendant as one of the robbers and in her testimony at this time she identified the sweater as having been worn by Mr. Stands when the two men first entered the motel and as having been worn by the defendant on the second occasion when they were brought in for identification. Defendant was charged with the offense of robbery and entered a plea of not guilty and not guilty by reason of mental illness. He was tried to a jury and found guilty of robbery in the first degree. The questions presented by defendant's appeal by assignments of error are two, as follows:

1. Whether the confrontation between Myrtle Wilhelm and Defendant Iron Shell, conducted on November

22, 1968 at Price's Motel, and the subsequent admission into evidence of testimony describing that confrontation, and the in-court identification of Defendant Iron Shell by Myrtle Wilhelm, were violative of Defendant's constitutional rights of due process of law and to counsel.

2. Whether Instructions 4 and 14 given by the Trial Judge incorrectly placed upon Defendant Iron Shell the burden of proving his insanity at trial.

In consideration of defendant's assignment of error concerning identification, we are at once confronted with three decisions of the United States Supreme Court decided June 12, 1967. Those cases are United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. We are also mindful of our own case of Utsler v. State, 84 S.D. 360, 171 N.W.2d 739, at p. 743, in which this court adopted the following language:

"It is now settled law that an in court identification by a witness to whom an accused was exhibited before trial without notice to and in the absence of counsel must be excluded unless it can be established that such evidence had an independent origin or that error in its admission was harmless. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. These cases were decided on June 12, 1967. On the same date the United States Supreme Court decided Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, in which it was held that the rule promulgated in Wade and Gilbert was not retroactive. Since the asserted constitutional error occurred before June 12, 1967, Utsler's claim in this regard requires no further consideration."

Utsler also reached the United States Court of Appeals, Utsler v. Erickson, 8th Circuit, 440 F.2d 140, where that court among other

things held that "police in investigating a probable offense may ask preliminary questions on identification and the recent whereabouts of persons under suspicion in order to proceed with the investigation and quickly eliminate those who appear to be beyond suspicion."

The Wade and Gilbert decisions have caused considerable difficulty and differences of opinion in their application to the fact situations that are subject of appeal to the state courts, and even federal courts. For instance, the Supreme Court of Illinois in the case of People v. Palmer, 41 Ill.2d 571, 244 N.E.2d 173, appears to have adopted the view that Wade and Gilbert apply only to post-indictment confrontations. There is no doubt the identification lineup which was found to be violative of defendant's right to counsel under the Sixth Amendment in Wade and Gilbert were in both cases post-indictment and defendant's counsel was not present. Holding contrary to the Illinois position is the State of California in People v. Fowler, 1 Cal.3d 335, 82 Cal.Rptr. 363, 461 P.2d 643.

The Supreme Court of the State of Kansas in an identification case wrote:

"There is some authority that **Wade** and **Gilbert** apply only to post-indictment confrontations. The basis of such reasoning stems from an inference which is drawn from the language of the United States Supreme Court itself in the later case of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, where the court, referring to the lineup cases, stated:

'* * * The rationale of those cases was that an accused is entitled to counsel at any "critical stage of the prosecution," and that a post-indictment lineup is such a "critical stage." * * *' (pp. 382, 383, 88 S.Ct. p. 970.)" State v. Griffin, 205 Kan. 370, 469 P.2d 417.

The Supreme Judicial Court of the State of Massachusetts in the case of Commonwealth v. Bumpus, 354 Mass. 494, 238 N.E.

2d 343, has set some guidelines which we feel are sound. Bumpus was found guilty upon an indictment charging breaking and entering a building in the nighttime with intent to steal. The facts of that case, in short, are:

"Greenberg, a student at Northeastern University, was in bed in his room at 214 Hemenway Street, Boston, on the early morning of July 13, 1967. About 3 A.M. he heard the outside door to the building being opened. Then he heard steps on the stairs. A man entered his room through the partly open door. Greenberg feigned sleep. He observed the man walk about his room, open drawers, and look in a closet. The man left after about twenty minutes. Greenberg called the police. Officer Fallon, and apparently other officers, arrived in ten minutes. After a talk with Greenberg, Officer Fallon went out. He returned in a short time with Bumpus."

In court Greenberg identified Bumpus as the intruder and he also said that Bumpus was with Fallon when he came back. Bumpus argued that admission of the in-court indentification was in violation of Wade, Gilbert and Stovall, supra. The Court said:

"Although the operation of these decisions (announcing novel principles 'not foreshadowed in * * * [Supreme Court] cases') is prospective only under the Stovall case, 388 U.S. 293, 299-301, 87 S.Ct. 1967, the events of July 13, 1967, took place about a month after the three decisions. Accordingly, we are required to follow the principles announced by the Supreme Court of the United States in the three cases, so far as those principles may be relevant, although our decisions have never stated such principles, and although, prior to the Wade case, we had not supposed that such constiutional principles existed."

The Massachusetts court analyzed the Wade, Gilbert and Stovall cases and we borrow from their analysis:

"In the Wade case * * * a bank robbery took place on September 21, 1964. An indictment was returned on March 23, 1965. Wade was arrested on April 2, 1965, and counsel was appointed to represent him on April 26. Fifteen days later, without notice to Wade's lawyer, two bank employees observed a lineup and identified Wade. The post-indictment lineup * * * was held * * * to be a 'critical stage of the prosecution' at which Wade was entitled to the assistance of counsel."

"In Gilbert * * * three eyewitnesses to one robbery observed Gilbert 'at a lineup conducted without notice to his counsel * * * 16 days days after his indictment and after appointment of counsel.' * * * The lineup occurred on March 26, after Gilbert had been indicted * * *. Witnesses, who were present at the lineup, identified Gilbert in court * * *. The court (per Mr. Justice Brennan, over vigorous dissent) said, * * * 'The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error. * * * [T]he record does not permit an informed judgment whether the in-court identifications * * * had an independent source.' The case * * * was remanded to the California Supreme Court 'to afford the State the opportunity to establish that the in-court identifications had an independent source, or that their introduction * * * was in any event harmless error.'[1]

"The **Stovall** case, * * * did not involve a post-indictment lineup. A doctor was stabbed to death about midnight on August 23, 1961. His widow was also stab-

---

1. The opinion * * * also said that '[q]uite different considerations' governed testimony of witnesses 'that they identified Gilbert at the lineup,' because '[t]hat testimony is the direct result of the illegal lineup.' It then proceeded. 'The State is therefore not entitled to an opportunity to show that that testimony had an independent source. Only a per se exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup.' "

bed a number of times. She was placed in a hospital for surgery. Stovall was arrested on the afternoon of August 24. 'The police, without affording  *  *  *  [Stovall] time to retain counsel,' took him to the widow's hospital room handcuffed to a police officer. He was the only Negro in the room. She identified him. Later she testified to her identification of him in the hospital room and 'also made an in-court identification.' After holding the **Wade** and **Gilbert** cases prospective in effect only  *  *  * and 'therefore inapplicable' to Stovall's case  *  *  * the Supreme Court (again per Mr. Justice Brennan) considered  *  *  * whether Stovall was 'entitled to relief on his claim that in any event the confrontation  *  *  was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.' After stating that the 'practice of showing suspects singly to persons for  *  *  * identification, and not as part of a lineup,  *  *  * [had] been widely condemned,' the opinion  *  *  * proceeded, 'However, a claimed violation of due process of law in the conduct of the confrontation depends on the **totality of the circumstances** surrounding it, and the record in the present case reveals that the showing of Stovall to  *  *  * [the widow] in an immediate hospital confrontation was imperative' ".

After the above analysis of the Wade, Gilbert and Stovall cases the Supreme Court of Massachusetts applied it to their own case. in the following language, which we think especially appropriate to our case:

"Reasonable confrontations of this type, in the course of (or immediately following) a criminal episode, seem to us to be wholly different from post-indictment confrontations (such as those in the **Wade** and **Gilbert** cases) in serious crimes after a significant interval of time, and in the absence of already appointed counsel. The Supreme Court of the United States has not applied the principle of the **Wade** and **Gilbert** cases in such circumstances.

Until we have more guidance than at present about the scope of necessary application of these cases, we shall regard them as not intended to apply to facts like those in the case at bar. This is an area where proper police protection of the public may be greatly embarrassed by rigid rules restricting intelligent, fair police action. Such action must be appraised with commonsense appreciation of the problems which confront policemen patrolling a residential area."

They further held in the Bumpus case that "The 'totality of the circumstances' * * * shows no violation, intentional or otherwise, of due process of law in this confrontation at the culmination of a still continuing series of events." They further held that there was no improper supporting of an in-court identification by evidence of prior identification.

The Supreme Court of Montana in the case of State v. Borchert, Mont., 479 P.2d 454, has adopted a similar position to the Massachusetts court in that they held the decisions of Wade and Gilbert were not binding where the lineup was immediately following the defendant's arrest and prior to his being charged and the appointment of counsel, even though the pretrial lineup occurred after the date of those decisions. They then considered the question of whether the pretrial identification was so unnecessarily suggestive and conducive to mistaken identification that the defendant was denied due process of law. Stovall v. Denno, supra. The court in Borchert said:

"There have been cases where the pretrial identification was suggestive of the accused guilt, yet there was not found to be any denial of due process. Examples of these permissible confrontations are where the witness and the accused face each other shortly after the commission of the crime at or near the scene of the crime; or where the accused is identified in court on a basis independent of the tainted confrontation. In the latter instance the independent identification is usually the observation of the witness during the commission of the offense."

The Supreme Court of Indiana, in McPhearson v. State, 253 N.E.2d 226, had before it the question of whether or not a defendant's right to counsel at every critical stage of the proceedings against him was violated by virtue of the fact that he was taken back to the service station immediately after apprehension to be identified without benefit of counsel. McPhearson was apprehended by police within minutes after the commission of the crime and was taken directly to the service station where he was identified by Hodgin as one of the robbers of the station. We think the court in an excellent reasoned opinion which we adopt in our case stated the right decision in the following language:

"In light of the foregoing we therefore take the position that a criminal suspect is entitled to be represented by counsel at a pre-trial confrontation unless the facts and circumstances indicate that other interests of the suspect as well as those of society (as represented by law enforcement officials) outweigh the interest of the suspect in being represented by counsel at **that** time. One such situation that we are recognizing today is where the suspect is returned to the scene of the crime **immediately upon apprehension** and where such apprehension occurs **within a reasonably short time after the commission of the alleged offense.** Commonwealth v. Bumpus (1968), 354 Mass. 494, 238 N.E.2d 343. Russell v. United States (1969), 408 F.2d 1280, certiorari denied 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245. The facts in the instant case obviously fall within this category. Appellant was apprehended by police within minutes after the commission of the crime and taken directly to the service station to be identified by Hodgin.

In appraising these circumstances, it would seem to this court, as we said in **Lewis,** that the best interests of the suspect as well as that of efficient law enforcement are served when the identification takes place immediately, though it be without counsel for the suspected party. At this stage of the police's investigation an obvious need is apparent for making a speedy determination as to the

suspect's identity. If the wrong man is apprehended, certainly the police must continue their search for the criminal. On the other hand, if the suspect is identified as the person who committed the alleged crime, the police might then see fit to curtail their activities as to that particular offense.

For this court to hold otherwise in situations such as that presented here would be to unreasonably encumber the state's execution of its responsibility in apprehending criminals. This court, while ever vigilant in its protection of individual constitutional rights, will nevertheless recognize the obvious practicalities of crime prevention, and where a practice does not infringe on a suspect's substantive rights, we shall not be guilty of unduly restricting the police in their efforts to protect the citizens of this state."

In view of the foregoing decisions which we believe to be applicable to our case, we hold that the confrontation between Myrtle Wilhelm and the defendant, Iron Shell, conducted at the motel and the subsequent testimony describing that confrontation and the in-court identification of defendant Iron Shell by Myrtle Wilhelm were not violative of defendant's constitutional rights to due process of law and to counsel.

■ The defendant has challenged Instructions 4 and 14 because he claims they placed the burden of proving insanity upon the defendant, Iron Shell. We believe he is in error. We have considered all of the instructions which were given by the court and especially those having to do with the burden of proof, and hold they correctly state the law in regard to the burden of proof of insanity in a criminal action. The statutory law of this state, SDCL 22-3-1, provides in part:

"All persons are capable of committing crimes except those belonging to the following classes: * * * (4) Lunatics, mentally ill persons, and all persons of unsound mind, including persons temporarily or partially deprived

of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness * * * ".

The instructions which were objected to were couched in the language of the statutes and they further placed upon the state the burden of proof beyond a reasonable doubt.

Instructions must be considered as a whole to determine whether the instructions as given were prejudicial to the defendant in a criminal case. State v. Brennan, 1891, 2 S.D. 384, 50 N.W. 625; State v. Bjelkstrom, 1905, 20 S.D. 1, 104 N.W. 481; State v. Montgomery, 1910, 26 S.D. 539, 128 N.W. 718; State v. Sonnenschein, 1916, 37 S.D. 585, 159 N.W. 101; State v. James, 1917, 39 S.D. 263, 164 N.W. 91; State v. Sturgis, 1929, 54 S.D. 245, 222 N.W. 681.

Affirmed.

BIEGELMEIER, P. J., and HANSON and WOLLMAN, JJ., concur.