STATE, Respondent v. HARBAUGH, Appellant

STATE, Respondent v. ARNWINE, Appellant

(210 N.W.2d 166)

(File Nos. 11133, 11136. Opinion filed August 31, 1973)

Thomas R. Vickerman, Asst. Atty. Gen., Pierre, for plaintiff and respondent. Former Atty. Gen. Gordon Mydland was on the brief in appeal #11136, Atty. Gen. Kermit A. Sande, was on the brief in appeal #11133.

Charles E. Carrell, Rapid City, for defendant and appellant Ronald Lee Harbaugh.

Wynn A. Gunderson, Rapid City, for defendant and appellant Richard J. Arnwine.

BIEGELMEIER, Chief Justice.

Defendants separately appeal from sentences entered on jury verdicts of guilty of robbery. On September 29, 1971, about 6 p.m., a man entered a shop in Rapid City, took two six-packs of Budweiser beer from the cooler, set them on the counter and, then, holding a gun pointed at the shop owner ordered her to put the money in the cash register into a sack with the beer. After ordering her to lie on the floor the man left with the sack containing the beer and money; he re-entered the shop a few minutes later and warned her to remain on the floor for five minutes and left again. The shop owner described the robber to the police who answered the alarm as being a clean-cut young man wearing a short T-shirt, blue jeans and dark glasses. A state witness testified he observed a man leave the shop about the time of the robbery and get into a white Pontiac. Another witness testified that as she was leaving the shop about that time she noticed a very young, clean-cut man, with dark hair sitting in a white car parked along side of the shop. At 7:30 p.m. defendants were apprehended and arrested at nearby Sturgis by police and two highway patrolmen who had been alerted to be on the lookout for two young men in western attire driving a white Pontiac. Defendants were taken to the city hall where they were read Miranda warnings and held for an identification lineup which was arranged for and held between 8:30 and 9 p.m.

The action came on for trial the morning of Tuesday, March 28, 1972, at 9 a.m., whereupon the attorney for codefendant

Harbaugh made a motion to suppress any testimony or any courtroom identification by the state's witnesses on the ground the 100-page transcript of the preliminary hearing, of which he had a copy, showed, for several reasons set out in the motion, that the lineup was defective and asked for a hearing thereon. The court indicated the motion (in which Arnwine later joined) was not timely as there were 50 people (it can be assumed they were witnesses and jurors) present; however, after some discussion, the trial judge excused the jury until the next day and held a hearing on the motion. Testimony was taken at the hearing. The court denied the motion.

Defendants claim the lineup procedure was unfair and violated due process of law, citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. These opinions, decided in 1967, were referred to by this court in the 1969 opinion of Utsler v. State, 84 S.D. 360, 171 N.W.2d 739. The court wrote that as Stovall v. Denno, supra, had "held that the rule promulgated in Wade and Gilbert was not retroactive" and that the "asserted constitutional error occurred before" the Wade and Gilbert decisions they were not applicable or binding. Hence, the statement of what was then settled law (as to identification in a pre-indictment lineup without presence of counsel) was dictum for, later, in 1972 in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, the court considered whether the per se exclusionary rule of post-indictment identifications in the absence of counsel should apply to such pre-indictment procedures. It declined to do so and wrote:

"In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. * * * We decline to depart from that rationale today by imposing a per se exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever."

The court went on to say:

"The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification."

Our court had occasion in 1971, after the Wade, Gilbert and Utsler opinions but before the 1972 Kirby decision, to consider the difference between those confrontations and identifications before and those after a criminal prosecution had been formally commenced in State v. Iron Shell, 86 S.D. 100, 191 N.W.2d 803. In an opinion by Justice Winans the 1972 Kirby ruling was, in effect, anticipated and announced by this court. It is referred to for the discussion and solution of this question.

■ Here the lineup consisted of nine persons—the two defendants and seven other men. For whatever claims are made by defendants on the printed page that the lineup was suggestive or unfair, the evidence supports the trial court's rulings, and defendants' claims are further answered by the color photograph in the record. It shows a sampling of men in ordinary dress who would be found in any random group of citizens. It was from this group that the two witnesses separately viewing them picked out the defendants. We conclude the lineup was not suggestive or unfair and did not taint the subsequent in-court identification, and defendants were not deprived of due process of law. Kirby v. Illinois, supra.

■ At the opening of court on Thursday, March 30th, defendant Arnwine's counsel stated that on March 28th (at 5 p.m.) he had requested the court reporter reporting the evidence at the trial to furnish him with a copy of the testimony taken that day on his motion to suppress; that the reporter told him he was unable to provide him with it; that he had learned the evening of the 29th that the state had requested and the reporter had furnished a portion of the transcript which "involved" Arnwine. For this reason he moved that the court "recover" the copy of the testimony transcript furnished the state and deny it the right to use it. The court denied the motion and error is asserted as to that ruling. The motion was not that the court direct the reporter to furnish a copy of the transcript defendant had requested of the

extended suppression hearing involving several witnesses, but rather that the court compel the state to deliver up a copy of a transcript of a portion of the testimony of Arnwine taken at the trial. Defendant Arnwine's argument is that the reporter's action was unfair, yet he has not shown that the state used the transcript or how this action resulted in any prejudice, and we find none.*

■ Finally, permitting the Chief of Police of Sturgis, Theodore or Ted Dickson to appear as a witness and testify when the name "Ted Dixon" was endorsed on the information was not error. It is apparent that the name was misspelled and that the rule of idem sonans applies. This court has held it is not error to permit such a witness to testify in the absence of a motion for a continuance or postponement of trial, State v. Poppenga, 1957, 76 S.D. 592, 83 N.W.2d 518. This witness appeared at the preliminary hearing and at the suppression hearing. He was not only known as a witness, but it was also known what his testimony would be. For that reason, too, the court has held it is not error to permit such a witness to testify. The objection is utterly without merit. State v. Burke, 86 S.D. 737, 201 N.W.2d 234. Another assignment of error with reference to an evidentiary ruling, admitting a gun, shells, etc. in evidence, abandoned by one defendant, is without merit.

The judgments are affirmed.

---

* The trial judge made inquiries of the reporter as to the time it would require to prepare the testimony taken at the suppression hearing. He stated it would have taken 13 hours of dictation and transcription as against 2½ hours to prepare the transcript requested by the state. There is argument in the briefs as to whether the trial judge's ruling, which is fully explained in the transcript, was within the court's discretion under the circumstances. While it may well have been, we do not reach that question because of the form of the motion and defendant's failure to show prejudice. Nor does SDCL 16-7-12 require reporters to furnish portions of transcripts during trial on a party's arbitrary timetable, although they may do so. It fixes the reporter's fee for the work, but it does not fix a time in which it is to be performed, except as set out in SDCL 15-29-3 when an appeal is taken. SDCL 23-46-3 is a statute which permits the court to order a transcript under certain conditions at county expense. No application was made to the court, nor was it ever called to its attention, except by the late oblique motion above discussed.

HANSON, WINANS and WOLLMAN, JJ., concur.

DOYLE, J., absent.