**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Jeffrey Wayne BURKMAN, Defendant and Appellant.**

**No. 12503.**

Supreme Court of South Dakota.

Argued March 20, 1979.

Decided July 11, 1979.

Pamela J. Tiede, Asst. State's Atty., Minnehaha County, Sioux Falls, for plaintiff and respondent.

Sidney B. Strange, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

### ACTION

This is an appeal from a conviction of possession of cocaine and a sentence of one year to the South Dakota State Penitentiary. We affirm.

### FACTS

By grand jury indictment, Jeffrey Burkman (appellant) was charged with four counts of possession of controlled substances in violation of SDCL 22–42–5. A Minnehaha County jury found appellant guilty of Count II, the possession of cocaine.

This appeal stems from appellant's arrest on February 25, 1978. In early February, 1978, prior to said arrest, appellant received a suspended imposition of sentence on a distribution of a controlled substance. As a condition of probation, appellant consented to submit his person, property, vehicle and place of residence to search and seizure by law enforcement officials or probation officer without the necessity of a search warrant.[1] The State and appellant admit that prior to the arrest of appellant, the searching officer did not know that appellant was on probation nor that he had signed a search-waiver provision as a condition of his probation.

Sioux Falls Police Officer Anderson was on patrol duty February 25, 1978. At approximately 6:45 p. m., he received a police radio communication of a break-in at a medical building. Officer Anderson began checking medical buildings which included dentist and doctor offices in the area. At 7:05 p. m. the officer spotted a red 1976 Lincoln bearing South Dakota plates, with its motor running and lights off in the parking lot of a dental office. In the car were two occupants. The lot was dark and the only illumination was that of a light-bulb above the building's back door.

Officer Anderson approached the Lincoln and rapped on the window. Appellant, who was behind the wheel, rolled the window down. The officer asked for identification. Appellant said his name was Jeff Burkman, but was unable to produce any identification. His passenger produced a driver's license reflecting that she was Mary Smith. This was her true name. The couple said they were going next door to see a friend.

The officer had a flashlight. He observed a red bandana on the appellant's lap. Protruding therefrom was a brown pill bottle. The officer asked to see the bottle. Appellant said "it's nothing," picked up the bandana and attempted to hand it to Mary Smith. The officer reiterated his desire to see the bottle. After saying again "it's nothing," appellant finally handed the pill bottle to the officer through the window he had previously opened.

Officer Anderson's backup, Officer Grimm, arrived at the scene. The two officers adjourned to the police car where they proceeded to examine the contents of the pill bottle. The lid was removed and a piece of cartoon, picture-like paper was unravelled. A white, powdery substance fell into Officer Anderson's briefcase. There were no pills in the pill bottle which had been issued to one Dawn Middendorp on the day before. Dawn Middendorp was not in the red Lincoln. Appellant and Mary Smith expressed that they had no information regarding the origins of the pill bottle, and although found in their presence, denied possession of the pill bottle. Both appellant and Mary Smith were arrested for possession of an illicit drug or substance, given their *Miranda* warnings and taken to the Sioux Falls jail.

Thereupon, a subsequent set of facts developed. Officer Grimm who had watched appellant palm a temporary driver's license returned to the Lincoln to "see what else was in there." He found a South Dakota driver's license receipt lying on the seat where appellant had been sitting. He also noticed brown paper similar to that used in smoking marijuana and other materials in the ashtray and a round silver film tin underneath the front seat. Chemical analysis later determined that the pill bottle contained methamphetamines and that the tin held phenmetrazine, cocaine, methamphetamines, and hashish.

After the car was taken to a towing lot, and in anticipation of the car being released to Mary Smith's father, Officer Ronald Hanson removed a matchbook cover and a portion of a computer card from the ashtray. The matchbook cover had Dawn Middendorp's name and telephone number on it.

During the trial, Mary Smith testified that the drugs in the pill bottle and in the

---

1. For reasons outlined in this opinion, we find probable cause for the searches. Therefore, we need not reach the issue of the search-waiver condition of appellant's probation or the officer's lack of knowledge that appellant was on probation.

film cannister belonged to appellant; that she had been dating appellant for approximately one and one-half months prior to the night of the arrest; and that on the evening of the arrest she had ingested a number of narcotics furnished by appellant. The source of these drugs was appellant's pocket. Mary Smith pleaded guilty to possession of controlled substances. As part of a plea bargain, she received probation.

## ISSUES PRESENTED

1. Did the trial court err in refusing to suppress the evidence seized from the Lincoln automobile when the officers had no search warrant? We hold that it did not.

2. Did the trial court err in denying appellant's motion to consolidate Counts II, III, and IV of the indictment into one count charging a single act of possession of controlled substances, conceding that the substances were found in the same place and that possession of the substances was prohibited by the same statute? We hold that it did not. We will not particularize our holding as it appeared in oral argument that appellant was abandoning this contention.

3. Was the corroboration of Mary Smith sufficient to establish the connection of appellant with possession of cocaine? We hold that it was.

4. Did the trial court err in refusing to suppress the matchbook cover and the torn computer card from evidence when the officers had no search warrant? We hold that the trial court did not err.

5. Did the trial court err in denying appellant's motion for a new trial or for judgment of acquittal notwithstanding the verdict after the jury returned a verdict of guilty on Count II and not guilty on the other counts? We hold that the trial court did not err.

## DECISION

### SEARCH ISSUES

The trial court denied appellant's motion to suppress the pill bottle and film tin seized from the Lincoln. Appellant argues that the trial court was in error; at the time the searching officer observed the pill bottle, appellant contends he did not have requisite information upon which to base a reasonable suspicion that appellant was violating the law. We do not agree.

Officer Anderson was checking medical offices in the area because of a break-in fifteen minutes earlier. After entering a dark parking lot behind a dentist's office, he noticed a Lincoln Continental. Its motor was running but its lights were off. There were two occupants; one was positioned behind the wheel.

With the information known to him at that time, Officer Anderson was justified in approaching the Lincoln to investigate what he believed, under the circumstances outlined above, to be suspicious conduct on the part of appellant. A police officer, in performing his official work, may properly question persons when the circumstances reasonably indicate that it is necessary to the proper discharge of his duties. *Orricer v. Erickson*, 471 F.2d 1204 (8th Cir. 1973); *People v. Singletary*, 268 Cal.App.2d 41, 73 Cal.Rptr. 855 (1968). A police officer has both the right and duty to make a reasonable investigation of suspicious activities even though the nature of the activities may fall short of grounds sufficient to justify an arrest or a search. *People v. Martinez*, 6 Cal.App.3d 373, 86 Cal.Rptr. 49 (1970). The questioning may, however, reveal a probable cause for making an arrest and a reasonable incidental search. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Therefore, Officer Anderson's knowledge of the recent break-in at a medical building and his observation of the lone car in a darkened dentist's parking lot in that area justified his further investigation. These facts, in addition to the officer observing a bottle protruding from the red bandana during questioning appellant, furnished probable cause for the search of the pill bottle.

The test for probable cause is simply: Were the actions of the suspect, viewed in the context of the attendant cir-

cumstances, such that they would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person was engaged in criminal activity? *Klingler v. United States,* 409 F.2d 299 (8th Cir. 1969); *People v. Hillery,* 65 Cal.2d 795, 56 Cal.Rptr. 280, 423 P.2d 208 (1967). Here, the answer is clearly yes. As Officer Anderson questioned appellant, appellant was unable to produce neither a driver's license nor other identification. It was appellant's duty to have his driver's license in his possession and to display it to the officer. See SDCL 32–12–22, SDCL 32–12–39. Officer Anderson, who knew of a medical center break-in fifteen minutes earlier, clearly saw the pill bottle positioned on appellant's lap. Appellant's answers to questions concerning the bottle were evasive. He attempted to conceal the bottle by wrapping it in a bandana and handing it to his companion. Considering appellant's "furtive movements," the break-in where it could be expected that pill bottles were removed, the location of the car, appellant's lack of identification, the pill bottle plainly visible on appellant's lap—the totality of the circumstances surrounding the situation gave rise to probable cause for the search and subsequent arrest. *Gallik v. Superior Court of Santa Clara County,* 5 Cal.3d 855, 97 Cal.Rptr. 693, 489 P.2d 573 (1971); *People v. Kuntze,* 371 Mich. 419, 124 N.W.2d 269 (1963).

After appellant was taken to the police car and arrested pursuant to SDCL 23–22–7,[2] Officer Grimm returned to the Lincoln to retrieve a temporary driver's license that he observed appellant holding during the initial questioning. While reaching for the license laying on the seat, Officer Grimm noticed a film tin positioned by the transmission console. He also noticed that the opened astray contained several articles, including a matchbook cover covered with numbers that appellant palmed during questioning. The tin was immediately removed from the car; the matchbook cover and computer card found in the ashtray were removed before the car was released to Mary Smith's father.

This search resulting in the seizure of the film tin following the arrest was justified. The events leading up to the arrest furnished probable cause to believe that the car did contain more drugs. Once a drug had been found in the car which formed the basis of the arrest, it was reasonable to believe that there were other drugs in the car. Police having probable cause to believe that an automobile which they have stopped contains contraband or evidence of a crime may search the vehicle without a warrant. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Orricer v. Erickson,* supra. See also *State v. Boardman,* 264 N.W.2d 503 (S.D.1978); *State v. Catlette,* 88 S.D. 406, 221 N.W.2d 25 (1974).

Officer Grimm did not remove the matchbook cover and computer card at the time the tin was removed. These were removed after the car had been taken to a local towing lot. The officer who removed the articles did not have a warrant. Appellant believes that the seizure of the matchbook and computer card constitutes an inventory search. He urges us to follow *State v. Opperman,* 247 N.W.2d 673 (S.D.1976).

This is not a case of inventorying the contents of a motor vehicle. Instead, we are dealing with the removal of objects in an open ashtray seen by an officer who had probable cause to search the car immediately following an arrest. The rule to be applied under the facts presented here is best stated in *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975):

> In *Chambers v. Maroney,* we held that police officers with probable cause to search an automobile on the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. There, as here,

2. Arrest by officer without warrant; repealed by S.D.Sess.L.1978, ch. 178, § 577, effective July 1, 1979.

"[t]he probable-cause factor" that developed on the scene "still obtained at the station house." 399 U.S., at 52 [26 L. Ed.2d 419, 90 S.Ct. 1975].

423 U.S. at 68, 96 S.Ct. at 305, 46 L.Ed.2d at 211.

## CORROBORATION

SDCL 23–44–10 provides:

A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof.

Appellant claims that the only evidence linking him with the cocaine came from Mary Smith. Absent any independent evidence linking him with the cocaine, appellant claims that his mere presence in the car where controlled substances were found is insufficient to sustain his conviction. Appellant would require the State to prove the cocaine was on his person.

■ While Mary Smith may have provided the only direct evidence linking appellant with the cocaine, our review of the record indicates that the testimony of the police officers and Dawn Middendorp corroborated Mary Smith's testimony. Further, the appellant was positioned in the red Lincoln where controlled drugs were found. Admittedly, this evidence was circumstantial; however, we indicated in *State v. Stecker,* 79 S.D. 79, 83, 108 N.W.2d 47, 49 (1961) that:

The statute does not require that corroborative evidence be produced which, by itself, would sustain a conviction. *State v. Hicks,* 6 S.D. 325, 60 N.W. 66. The rule is satisfied if such evidence in some substantial degree tends to affirm the truth of the testimony of the accomplice and tends to establish the guilt of the defendant. *State v. Levers,* 12 S.D. 265, 81 N.W. 294; *State v. Phillips,* 18 S.D. 1, 98 N.W. 171; *State v. Walsh,* 25 S.D. 30, 125 N.W. 295; *State v. Drapeau,* 45 S.D. 507, 189 N.W. 305; *State v. Pray,* 65 S.D. 1,

270 N.W. 512. Circumstantial evidence may be sufficient to corroborate the testimony of an accomplice. *State v. Willers,* 75 S.D. 356, 64 N.W.2d 810. Where evidence of corroboration appears, its weight and credibility is for the jury. *State v. Walsh,* supra.

## INCONSISTENT VERDICTS

■ The jury found appellant not guilty of Counts I, III, and IV of the indictment. They did find appellant guilty of Count II, possession of cocaine. The cocaine was found in the film tin. In addition to the cocaine, the tin contained methamphetamine, phenmetrazine, and hashish. Appellant contends that it was logically impossible for the jury to find that he possessed only one of the four drugs discovered in the same film tin.

Appellant's case deals with four counts based upon the same transaction. All counts occurred at the same time and place. The evidence required to establish one offense did not differ substantially from the evidence required to establish the other offenses. Consistency of the verdicts is not necessary because the verdicts were not interdependent. Each count is treated as if it were separate. *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). We said in *State v. Gerdes,* 258 N.W.2d 839 (S.D.1977) that juries have the power, if not the right to act irrationally. We do not say that the jury did so here. Ours is not to second-guess the jury's reasoning. We have, however, examined the record and found the evidence sufficient to convict appellant of Count II. We will not, therefore, inquire into the motives prompting this jury to acquit appellant on Counts I, III, and IV.

The judgment is affirmed.

All the Justices concur.