STATE of South Dakota, Plaintiff and Appellee,

v.

Roger Phillip CLABAUGH, Defendant and Appellant.

No. 14241.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1984.

Decided April 4, 1984.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Richard Braithwaite, Sioux Falls, for defendant and appellant.

DUNN, Justice.

This is an appeal from a judgment of conviction for first-degree robbery. We affirm.

On the evening of July 28, 1982, two men robbed a Taco John's restaurant in Sioux Falls, South Dakota. Three employees of the restaurant witnessed the robbery and were able to describe the perpetrators. As the robbers drove off, one of the witnesses observed the license number on the getaway vehicle and reported it to the police.

A short time later, a police officer saw the robbers' car, which contained two people, and gave chase. The car was within his view for all but a short period of time before he finally stopped it. Once stopped, the car contained only one person, who was arrested; the other robber had jumped out of the car during the chase. Thereafter, the police began a search. The only person they found on the streets was appellant Roger Phillip Clabaugh, and he fit the basic description given by the witnesses. Appellant was detained until one of the witnesses arrived at the scene and identified him as one of the robbers. Appellant was then arrested.

At the trial, all three Taco John's employees identified appellant as one of the robbers. Appellant's accomplice also testified that he and appellant were the two robbers. The jury returned a guilty verdict on the robbery charge, and after a court trial, appellant was also convicted of being an habitual criminal.

I

Appellant raises eight issues in this appeal. His first contention is that the erasure of tapes of radio and telephone calls made to the police dispatcher in the hours following the robbery is a violation of his due process rights. Appellant planned to use the tapes as evidence of the description of the robbers given to the police, of the time sequence of the robbery and getaway, etc. On August 26, 1982, appellant served a discovery motion asking for the tapes; this request was granted by the trial court on October 22, 1982. However, the tapes had been erased on September 28, 1982, as part of a normal recycling process in the police department. Appellant's motion for dismissal because of the erasure was denied.

It is a well-settled rule that suppression by the prosecution of evidence favorable to an accused violates due process where the evidence has been requested by the accused and is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecutor. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Parker*, 263 N.W.2d 679 (S.D.1978). To fall within the rule, the defendant must make a timely request for the evidence, the evidence must be in the State's possession, and the evi-

dence must be material and exculpatory. *State v. Wilde,* 306 N.W.2d 645 (S.D.1981). If the evidence was destroyed, making it impossible to show its exculpatory nature, the inability to show that the evidence was exculpatory does not alone defeat a defendant's claim. *State v. Parker, supra.*

 Despite appellant's request for the tapes and their suppression due to erasure, we conclude that appellant's due process rights were not violated. First, as we stated in *State v. Cody,* 323 N.W.2d 863 (S.D.1982), not every failure to produce evidence under court order will require reversal, for implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial. After a review of all the evidence, we do not believe that introduction of the tapes would have changed the ultimate verdict. Second, we held in *State v. Moves Camp,* 286 N.W.2d 333 (S.D.1979), that a good faith erasure of a tape which was requested by the defendant does not deny him a fair trial. Here, appellant has never claimed the erasure was done for the express purpose of keeping him from gaining access to the tape. Therefore, his contention must fail.

## II

Appellant's second contention is that a mistrial should have been granted after the prosecutor exceeded the bounds of a court order when questioning a witness. The trial court had ordered the questions to be limited to two points, but the prosecutor asked a question on a different matter. The trial court ruled that despite the actions of the prosecutor, appellant was not prejudiced.

 An actual showing of prejudice must exist to justify the granting of a mistrial. *State v. High Elk,* 298 N.W.2d 87 (S.D.1980); *State v. Murphy,* 89 S.D. 486, 234 N.W.2d 54 (1975). The record in this case indicates that although an improper question was asked by the prosecutor, timely objection was made and the question was never answered. We fail to see any prejudice to appellant under these facts.

*Cf. State v. Olson,* 83 S.D. 260, 158 N.W.2d 526 (1968), which contained a very similar set of circumstances.

## III

Appellant's third contention is that the show-up procedure used with witness Randy Reider was impermissibly suggestive and tainted his in-court identification of appellant. Reider was one of the employees at Taco John's when it was robbed and he saw both of the robbers. Later, after appellant had been apprehended, the police took Reider to the scene of detention. Reider positively identified appellant as one of the robbers. This show-up occurred approximately 30–35 minutes after the robbery was committed; at the show-up, appellant was not in handcuffs or other form of visible custody, but he was the only person in the area not wearing a law enforcement uniform. Reider subsequently identified appellant at both the preliminary hearing and the trial. The trial court found that the identification procedure employed by the police was not impermissibly suggestive.

 This court has set forth the rule that an in-court identification of an accused is not admissible at trial if it stems from a pretrial lineup held without the presence of counsel, unless it can be established that the identification had an independent origin or that its admission was harmless error. *State v. Bullis,* 255 N.W.2d 290 (S.D.1977); *State v. Iron Shell,* 86 S.D. 100, 191 N.W.2d 803 (1971). In both *Bullis* and *Iron Shell,* we recognized an exception to the rule—where the suspect is returned to the scene of the crime immediately upon apprehension and where such apprehension occurs within a reasonably short time after commission of the alleged offense. The rationale for this exception is that it is in the best interests of both the suspect and law officers when an identification takes place immediately. If the wrong man was apprehended, the suspect can be freed and the police can continue their search; if the suspect is positively identified as the perpe-

trator, the police can curtail their search activities. *Iron Shell*, 86 S.D. at 109–10, 191 N.W.2d at 808. Furthermore, the dangers of misidentification are remote when there is an immediate confrontation. *Bullis*, 255 N.W.2d at 292.

■ The rationale of the *Iron Shell* and *Bullis* exception is equally applicable to the circumstances of the present case. Although this show-up did not occur at the scene of the crime, it occurred at the scene of appellant's detention very shortly after the crime was committed and shortly after appellant was apprehended, thus minimizing any danger of misidentification. Had appellant not been positively identified, the police could have immediately resumed their search. Under similar facts, the Minnesota Supreme Court concluded that a show-up was proper where the victims were brought to the scene of arrest to identify the suspect. *State v. Mallory*, 337 N.W.2d 391 (Minn.1983). Therefore, we hold that the trial court was not clearly erroneous in finding that the show-up procedure used by the police was proper.

### IV

■ Appellant also challenges the photo identification procedure used with witness Diane Aielts, claiming it was so impermissibly suggestive that it tainted her in-court identification of appellant. The photo lineup, which took place three or four days after the robbery, consisted of six photographs of men with similar characteristics. Each photograph bears a date, and the dates on all the photographs, except appellant's, are prior to the robbery in this case. One photograph, in addition to appellant's, has a 1982 date. Aielts, who was working at Taco John's when it was robbed, picked appellant out of the photo lineup "right away" and was positive in making the identification.

Appellant did not raise this issue before the trial court, therefore it is not properly before this court on appeal. *State v. Holt*, 334 N.W.2d 47 (S.D.1983); *State v. O'Connor*, 265 N.W.2d 709 (S.D.1978). Nevertheless, appellant contends that we may still review the issue under the plain error doctrine. SDCL 23A–44–15. We have recognized the plain error rule, but only in exceptional cases and then it must be applied cautiously. The rule does not encompass every error that occurs at trial, but only those which are both obvious and substantial. *State v. Dace*, 333 N.W.2d 812 (S.D. 1983); *State v. Brammer*, 304 N.W.2d 111 (S.D.1981).

A review of the evidence leads us to the conclusion that appellant's claim does not rise to the level of plain error. Although it would have been better for the dates on the photographs to have been covered, the significance of the dates pales in light of Aielts' immediate and positive identification and in light of another witness' inability to pick appellant out of the photo lineup. Moreover, there was other substantial evidence presented at trial which tends to show appellant's guilt.

### V

■ We next address appellant's contention that the police lacked probable cause to either stop or arrest him. In *State v. Burkman*, 281 N.W.2d 436, 439 (S.D.1979), this court said "[a] police officer, in performing his official work, may properly question persons when the circumstances reasonably indicate that it is necessary to the proper discharge of his duties." In the present case, the police saw only one person in the general search area, and that person fit the basic description of the robber. Therefore, it was clearly reasonable for the police to stop and question appellant.

We also stated in *Burkman* that probable cause to make an arrest exists when the actions of the suspect, viewed in the context of the attendant circumstances, are such that they lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person was engaged in criminal activity. *Id.* at 439–40. *See also State v. Soft*, 329 N.W.2d 128 (S.D.1983). Here, upon questioning, appellant admitted to residing at the address where the other suspected robber had just

been apprehended; additionally, appellant's name had been associated with a number of other crimes in Sioux Falls and a witness was able to identify him as a robber. In view of all these circumstances, the police had probable cause to arrest appellant.

## VI

 Appellant next contends that there was insufficient foundation for admission of exhibit 6 at the court trial on the habitual criminal charge. The exhibit is a packet of materials from California, which includes copies of appellant's prior felony convictions, sentencing data, and fingerprints; all of the materials are certified by the legal custodian of the records.

Appellant's contention is totally without merit. SDCL 22–7–11 provides, in pertinent part: "An official court record under seal or a criminal history together with fingerprints certified by the public official having custody thereof will be sufficient to be admitted in evidence without further foundation to prove the allegation that the defendant is an habitual criminal." Since exhibit 6 meets all the requirements of SDCL 22–7–11, it was properly admitted by the trial court.

## VII

 Appellant's seventh contention is that he could not be convicted under the habitual criminal information when the State alleged three prior felony convictions but proved only one. We find this claim to be without merit. Regardless of whether one prior conviction or all three were proven, appellant's punishment would still have been enhanced to that for a Class 1 felony.* Therefore, no prejudicial error occurred. Cf. State v. Krana, 272 N.W.2d 75 (S.D.1978); State v. Provost, 266 N.W.2d 96 (S.D.1978).

* Appellant was convicted of first-degree robbery, a Class 2 felony. SDCL 22–30–7. Under SDCL 22–7–7, if one or two prior convictions are proven, the principal charge is enhanced to the next

## VIII

Appellant's final contention is that the State should not have been permitted to use fingerprint evidence at the habitual offender trial. The trial court had ordered the State to make available to appellant all documents and objects which would be used by the State as evidence. However, fingerprint cards, which were admitted into evidence over appellant's objections and were used to identify appellant as the person named in a California conviction, were never made available to appellant prior to the trial.

 Although a trial court's order for production of evidence must be expeditiously carried out and obeyed, not every failure to produce evidence is, without more, prejudicial error. When evidence is made available at trial and the defendant does not move for continuance, he cannot claim denial of a fair trial. State v. McKee, 314 N.W.2d 866 (S.D.1982); State v. Fox, 313 N.W.2d 38 (S.D.1981). Here, at the beginning of the court trial, appellant became aware that witnesses would identify fingerprint records, but appellant made no objection at that time. Only later, when the records were actually offered as evidence, did appellant object. At no time did appellant request a continuance. Therefore, we cannot say there was prejudicial error in the admission of the fingerprint records.

The judgment of conviction is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

The majority opinion determined the identification procedure used by the police was proper based on a right to counsel analysis and the exceptions this Court has carved thereunder. However, it is not ap-

more severe class—in this case, Class 1. Under SDCL 22–7–8, the enhancement for three or more prior felony convictions is to Class 1.

pellant's right to counsel, but his general right to due process which is at issue in this instance. Disposition, therefore, rests on a different analysis, i.e., whether the procedure was impermissibly suggestive and unreliable.

The trial court held that the identification procedure employed by the police was not impermissibly suggestive. I cannot agree. Without doubt, the identification procedure employed by the State was impermissibly suggestive. The police shined a spotlight on the only non-uniformed person (appellant) and he was brought closer for a better view. Reider, the witness, said appellant looked like one of the robbers, but he was not sure. One robber was dark-haired and thin, the other being a larger man with blond hair. It was not until pressed by police for a yes or no answer that Reider said appellant was indeed one of the two robbers. Appellant fit the description of the dark-haired robber.

A confrontation staged in this manner is impermissibly suggestive because of a tendency to pinpoint an individual and as much as say "this is the one." Procedures such as this are disapproved, not merely because they are suggestive, but because they increase the likelihood of misidentification. It is this likelihood which violates a defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). Thus, the rule for testing out-of-court identification procedures is not merely to determine whether the procedure was suggestive but, further, whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." 409 U.S. at 199, 93 S.Ct. at 382.

The length of time between the crime and the confrontation, a deciding element in the majority opinion, is only one of the factors to be considered in determining reliability. Other factors to be considered in the evaluation "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, [and] the level of certainty demonstrated by the witness at the confrontation ...." *Id.*

Applying this criteria to the facts herein, I find the in-court identification was not tainted. There was sufficient indicia of reliability attached to the out-of-court procedure so as to minimize the likelihood of misidentification and thereby comport with due process. "[R]eliability is the linchpin in determining the admissibility of identification testimony ...." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977). Despite the impermissive suggestiveness of the out-of-court procedure, admission of the identification was warranted. Reider was an eyewitness to the crime; Reider saw appellant and he had immediate attention to the robbery being committed before his eyes; Reider, in approximately one-half hour from the commission of the crime, identified appellant as the dark-haired robber.