**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Julius C. WERBROUCK, Jr.,
Defendant-Appellant.**

No. 77–2060.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1978.

Decided Nov. 22, 1978.*

Opinion Dec. 27, 1978.

* This appeal was originally decided by unreported order on November 22, 1978. *See* Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

Robert L. Stephan, South Bend, Ind., for defendant-appellant.

John S. Leonardo, Asst. U. S. Atty., South Bend, Ind., for plaintiff-appellee.

Before CUMMINGS, PELL ** and WOOD, Circuit Judges.

PER CURIAM.

The defendant, Julius C. Werbrouck, Jr., was indicted on April 13, 1977, for violation of federal gambling laws, 18 U.S.C. § 1955 and § 2, and was convicted by a jury on September 2, 1977.[1]

■ The defendant first contends that the trial court erred in denying his demand for a preliminary hearing. Pursuant to Rule 5.1 of the Federal Rules of Criminal Procedure, a preliminary examination is not available to a defendant who has already been indicted as in this case. The purpose of a preliminary hearing is to determine probable cause and thus a hearing is unnecessary after indictment as the grand jury has already made that determination. *United States v. White,* 454 F.2d 435 (7th Cir. 1971), *cert. denied,* 406 U.S. 962, 92

S.Ct. 2070, 32 L.Ed.2d 350 (1972); *United States v. Lauchli,* 444 F.2d 1037 (7th Cir.), *cert. denied,* 404 U.S. 868, 92 S.Ct. 162, 30 L.Ed.2d 112 (1971).

■ The defendant also asserts that the trial court erred in denying his motion to dismiss. The gist of this motion was that the defendant's own gambling activity was local in nature and therefore did not have an interstate character sufficient to meet the federal jurisdictional requirements of 18 U.S.C. § 1955. Section 1955, however, does not require a showing that the gambling activities of each person involved have affected interstate commerce. *United States v. Manson,* 494 F.2d 804 (7th Cir.), *cert. denied,* 419 U.S. 994, 95 S.Ct. 304, 42 L.Ed.2d 266 (1974). The defendant further argues that Section 1955 is unconstitutionally vague. This argument has previously been rejected by the courts. *United States v. McCoy,* 539 F.2d 1050 (5th Cir. 1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1978); *United States v. Sacco,* 491 F.2d 995 (9th Cir. 1974).

■ Defendant next argues that the trial court erred in denying his motion to suppress evidence of certain Holiday Inn registration and billing records. He complains that the evidence before the magistrate was insufficient to support a finding of probable cause for the search, especially because the search occurred at night. However, the affidavit which accompanied the search warrant was nine pages long and included the detailed observations of FBI Agent Naum who in an undercover capacity was present at the casino on numerous occasions. Having reviewed the affidavit, we are of the opinion that it provided reliable, detailed information sufficient to constitute probable cause. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). As to defendant's objection to the authorized nighttime search which commenced at 10:00 p. m., we find the timing of the search to be reasonable because, as the affidavit

_____

** Although Judge Pell was a member of the panel at oral argument, he did not participate in the decision of this case.

1. The district court imposed a two-year suspended sentence, two years of probation and a fine of $20,000.

stated, the casino operated only in the evening between 8:00 p. m. and 2:00 a. m. Thus the trial court was correct in denying the defendant's motion to suppress.

The defendant also raises the issue of whether the trial judge erred in excluding all prospective jurors who admitted during *voir dire* that they had "read anything about this defendant or this case in the South Bend Tribune or in any other newspaper." The judge also asked, "Have any of you other than those who have just left heard or read about this case in any way from any other media, any other newspaper, the television or radio or received any other information about this case other than what you have heard here today from me in the course of these proceedings?" All persons responding affirmatively to these questions were excused. The defendant contends that by excluding 23 prospective jurors exposed to new accounts of the case, the court excluded a geographic group from the jury, thereby denying his constitutional and statutory right to a trial by a jury reflecting a representative cross section of his community.

■ The requirement that an impartial jury be drawn from a cross section of the community "does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible." *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946). In this case the exclusion of jurors was not a blanket exclusion of persons from a geographic area. The jury selected included three members from the community in which the defendant lived. Although the exclusion may have had the incidental effect of reducing the number of prospective jurors from a certain geographic area, the trial judge did not commit error in exercising his discretion by protecting the defendant from

the potential prejudice that might have resulted from pretrial publicity.[2] *United States v. Smaldone,* 485 F.2d 1333 (10th Cir. 1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974).

■ Ironically, the defendant also argues that the trial court erred at the close of trial in not giving *sua sponte* a jury instruction cautioning the jury against reliance on any prejudicial publicity that may have appeared during the course of the trial. The defendant, however, never apprised the court of any prejudicial publicity nor requested a cautionary instruction. It is clear that the burden is on the party seeking such an instruction to raise the issue before the trial court. *United States v. Pomponio,* 563 F.2d 659 (4th Cir. 1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978); *Margoles v. United States,* 407 F.2d 727 (7th Cir.), *cert. denied,* 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969). Because the defendant failed to satisfy this burden, because the trial judge cannot be expected to read, see and hear all media coverage of the trial, and because there was no showing that the jury was in fact exposed to any of the publicity, we hold that no error was committed. From time to time during the trial the judge carefully admonished the jury not to permit exposure to any trial publicity.

■ Next we consider defendant's claim that there was insufficient evidence to sustain the court's denial of the defendant's motion for acquittal and the jury's verdict of guilty. The defendant contends that there was neither sufficient evidence to establish his involvement with the gambling business as a principal or as an aider and abettor, nor to establish the jurisdictional requirement of substantially continuous operation of the enterprise in excess of 30 days. When viewed in the light most favorable to the government, the evidence is

---

2. This conclusion is not to be construed as a recommendation that this procedure be followed regularly in all cases without regard to the nature of the publicity and its possible impact upon prospective jurors. It is a matter

best left to the sound exercise of the trial judge's discretion in particular cases, but also with due regard for the efficient utilization of the panel of prospective jurors.

more than sufficient to sustain the conviction. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Substantial evidence established that: (1) the defendant owned and operated the Holiday Inn Motel and the adjoining Lincoln Highway Inn Restaurant in South Bend, Indiana; (2) the defendant moved out of his personal room at the Holiday Inn to allow the gambling casino to move in; (3) the defendant permitted certain motel rooms to be physically altered for gambling purposes, including the building of partition walls and the installation of a steel door, cameras, monitors and electronically controlled door locks; (4) the defendant charged no rent for the motel casino rooms and regularly provided customers free food and drinks from his adjoining restaurant; (5) the defendant held keys to the electronically controlled doors and at times admitted persons to the rooms; and (6) the defendant was observed in the gambling casino. From these and other factual determinations the jury and trial court could plainly have concluded that the defendant was guilty beyond a reasonable doubt.

▮ Defendant's objections regarding the statutory 30-day gambling operation jurisdictional requirement are without merit. In *United States v. Mattucci,* 502 F.2d 883, 889 (6th Cir. 1974), the court declared:

> The statute, 18 U.S.C. § 1955(b)(1)(iii), clearly makes the thirty day requirement a part of the definition of illegal gambling business and not a specific requirement as to the duration of individual participation by persons involved in such business.

The record contains substantial evidence to support the conclusion that the Holiday Inn casino was substantially the same illegal gambling operation which had begun at a different location five months earlier before the move to the defendant's motel.

▮ We consider lastly whether the trial court erred in prohibiting the defendant's efforts to impeach a government witness through specific instances of misconduct. David Andrews, a former police officer, was one of three government witnesses who testified that he observed the defendant at the gambling casino. The defendant attempted to introduce findings of the Board of Public Works and Safety of South Bend, Indiana, which described an incident seven years previously in which Andrews, as a police officer, had planned to have friends plant marijuana on certain persons whom Andrews then intended to arrest. Andrews was fired. However, the defendant failed to cross-examine Andrews regarding that incident, claiming that when he cross-examined Andrews he was unaware of the impeaching information. The day after Andrews testified the defendant called the former city attorney for South Bend as his witness and attempted to introduce the alleged impeaching information through him. The district court properly prohibited its introduction in this manner.

▮ The defendant first contends the evidence should have been admitted under Rule 609 of the Federal Rules of Evidence which permits impeachment by use of prior convictions of certain types of crimes. The alleged impeaching information was not a record of the conviction of a crime. It was merely a set of findings by the Board of Public Works and Safety which resulted in Andrews' discharge from the Police Department. The distinction is significant. A criminal conviction entails a finding of guilty beyond a reasonable doubt in a forum which abides by specific rules of evidence and procedure designed to protect the defendant. The findings of a municipal administrative forum do not fit within the language or intent of Rule 609.

▮ The defendant also argues that the impeaching information should have been admitted under Rule 608(b)[3] through the former city attorney called as defendant's witness. The rule is clear on its face that specific instances of conduct other than for conviction of a crime may not be proved by

---

**3.** Rule 608(b) provides in pertinent part:
Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for

extrinsic evidence. The effort, in the discretion of the district court, is limited to cross-examination. The defendant further argues that the district court should have exercised its inherent judicial discretion and permitted the information to be admitted through the city attorney on direct examination because the defendant was not prepared to cross-examine Andrews and thus could not follow the proper procedure of confronting Andrews with the alleged impeaching information on cross-examination. This reasoning is premised on the defendant's contention that Andrews was a "surprise witness" precluding the defendant from preparing an effective cross-examination. The record, however, does not support this premise. Prior to trial, the district court judge read to counsel and jury a list of potential witnesses, one of whom was Andrews. Accordingly, Andrews could not be classified as a "surprise witness."

The defendant next called and attempted to introduce the alleged impeaching information through his witness, Kenneth McDonald. On direct the defendant questioned McDonald regarding Andrews' reputation. On redirect, however, the defendant sought to elicit testimony regarding the same specific instances of Andrews' conduct. The court again properly sustained the government's objections, relying on Rule 608(b).

The defendant's final try to introduce the alleged impeaching information was through government witness Michael Borkowski, Chief of Police of South Bend, who testified as to a prior favorable departmental rating of Andrews' character. On cross-examination the defendant elicited from Borkowski that Andrews had been discharged from the police force, but the court would not permit the defendant to inquire into the specific details of the discharge. ▮ The trial court has wide discretion under Rule 608(b)(2) to permit inquiry into specific instances of conduct on cross-examination if probative of truthfulness or untruthfulness. Even if we assume ar-

guendo that the court erred in the exercise of this discretion in not allowing the defendant to ask Borkowski about the details of the discharge, the error was harmless because Borkowski's answer would have been that he lacked any knowledge about the discharge. See United States v. Ling, 581 F.2d 1118 (4th Cir. 1978). This is evident from the record because during cross-examination the witness was asked, "Well, it's a fact that he (Andrews) was fired for misconduct of some type; right?" Borkowski's response was, "I have no knowledge whatsoever, Mr. Stephan, of his discharge." The point was made that Andrews had been fired. Only the details were lacking in the evidence. "In ruling on evidentiary matters, the trial judge must balance the probative value of testimony against potential prejudice, and his exercise of discretion will not be disturbed on appeal save for grave abuse." United States v. Wright, 160 U.S. App.D.C. 57, 62, 489 F.2d 1181, 1186 (1973).

We find no reversible error.

AFFIRMED.

truthfulness or untruthfulness; or (2) concerning the character for truthfulness or untruthfulness of another witness as to which

character the witness being cross-examined has testified.