**Homer I. CHIEF EAGLE, Appellee,**

v.

**Herman SOLEM as Warden of the South Dakota Penitentiary, Appellant.**

No. 15540.

Supreme Court of South Dakota.

Argued April 22, 1987.

Decided Dec. 30, 1987.

Rehearing Denied Feb. 3, 1988.

Robert L. Chavis, Yankton, for appellee.

Thomas Harmon, Asst. Atty. Gen., Pierre, for appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

YOUNG, Circuit Judge.

Homer I. Chief Eagle (Chief Eagle) was convicted of third degree burglary under SDCL 22–32–8. Chief Eagle applied for a writ of habeas corpus and a pre-emptory writ was issued. After a full briefing of the issues, the trial court granted Chief Eagle's writ of habeas corpus. The state filed and served their notice of appeal. We reverse.

The facts of this case are set out in detail in our prior decision of *State v. Chief Eagle*, 377 N.W.2d 141 (S.D.1985). In that appeal, Chief Eagle claimed that court-appointed trial counsel provided ineffective assistance of counsel by failing to object to an impermissibly suggestive pre-trial iden-

tification. In this habeas corpus proceeding, Chief Eagle again raises a claim of ineffective assistance of counsel. He bases his claim on different facts, however.

Chief Eagle claims that his arrest was made pursuant to an improperly issued "Magistrate's Letter" ordering that he be taken into custody. Because the "Magistrate's Letter" was improperly issued Chief Eagle argues that a showing of probable cause was required to effectuate a valid arrest. Chief Eagle contends that the necessary probable cause was lacking, and the court-appointed counsel provided ineffective assistance of counsel by failing to move for a suppression of all evidence obtained in the course of the arrest.

Before reaching the ineffective assistance of counsel claim, it is helpful to outline the facts surrounding the issuance of the "Magistrate's Letter." On November 7, 1983, nearly a year-and-a-half before the burglary incident, Chief Eagle appeared before a lay magistrate in Tripp County, South Dakota, and pled guilty to disturbing the peace, a violation of a city ordinance. Chief Eagle was sentenced to fifteen days in the city jail and fined thirty- five dollars ($35.00). The jail sentence was suspended, conditioned upon Chief Eagle's satisfactory completion of a substance abuse program. Chief Eagle successfully completed the program, but failed to pay the fine.

On March 1, 1984, the Tripp County Clerk of Courts, who is also a lay magistrate, submitted a letter to the Winner Police Department advising them that Chief Eagle owed a thirty-five dollar ($35.00) fine and that he should be taken into custody to serve out the unpaid fine at the rate of twenty dollars ($20.00) per day. On April 25, 1984, Chief Eagle was arrested by a city policeman in Winner, South Dakota. The sole basis for Chief Eagle's arrest was the "Magistrate's Letter" issued by the Tripp County Clerk of Courts, based upon Chief Eagle's failure to pay the fine for disturbing the peace.

Acting pursuant to the "Magistrate's Letter" the police delivered Chief Eagle to the Winner Police Department. Sometime after Chief Eagle was brought to the station, the victim of the burglary arrived at the station to describe the incident. Upon observing Chief Eagle, the victim said, "That's him." Chief Eagle replied, "I don't know why you are so angry, I got out when I seen you." It is important to stress that Chief Eagle's presence at the police station at the same time that the victim was present was purely an accident. There is no indication that the police planned the incident in the hope of implicating Chief Eagle. Instead, the record indicates that the meeting was fortuitous, and not the result of any predesign on the part of the Winner Police Department.

We turn first to the validity of Chief Eagle's arrest pursuant to the "Magistrate's Letter." Because the sentence to be enforced was for a fine only, SDCL 23A–27–23 controls. SDCL 23A–27–23 reads:

> If the sentence is for a fine alone, execution may issue thereon as a judgment against the defendant in a civil action. Such a judgment is a lien, and may be docketed and collected in the same manner.

Thus, SDCL 23A–27–23 makes it clear that the proper remedy available to the Tripp County Clerk of Courts was pursuing a civil judgment to execution, not taking Chief Eagle into custody. This conclusion is consistent with the approach taken by the United States Supreme Court. For example, in the case of *Tate v. Short*, 401 U.S. 395, 28 L.Ed.2d 130, 91 S.Ct. 668 (1971) the defendant was imprisoned for nonpayment of fines. The court reached the following conclusion with regard to the constitutionality of the imprisonment:

> ... the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.

401 U.S. at 398, 28 L.Ed.2d at 133, 91 S.Ct. at 671, quoting the concurrence in *Morris*

*v. Schoonfield,* 399 U.S. 508, 509, 90 S.Ct. 2232, 2233, 26 L.Ed.2d 773, 773–774 (1970).

Likewise, in the case of *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), the United States Supreme Court held that a defendant who is financially unable to pay a fine may not be constitutionally imprisoned beyond the maximum duration fixed by statute. In this case, the "Magistrate's Letter" improperly converted a fine into a term of imprisonment. Chief Eagle cannot, however, ground his ineffective assistance of counsel claim solely on the invalidity of the "Magistrate's Letter." In this state more than simple invalidity is required to successfully pursue an ineffective assistance of counsel claim.

In order to show the ineffectiveness of trial counsel's representation, Chief Eagle must show that his trial counsel failed to perform an essential duty and that prejudice resulted therefrom. *Anderson v. State,* 373 N.W.2d 438 (S.D.1985). The prejudice shown must work to a defendant's actual and substantial disadvantage and infect the entire trial with error of constitutional dimensions. *Id.*

The United States Supreme Court delineated the appropriate test for prejudice in the case of *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984).

> [T]he defendant [must] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

The *Strickland* court went on to state: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697, 104 S.Ct. at 2070, 80 L.Ed.2d at 699.

■ In this case, the element of prejudice is missing because, in all probability, evidence of the victim's identification would have been admitted even if counsel had made a motion for suppression. The United States Supreme Court has held that in-court identifications cannot be excluded as the fruit of an unlawful detention where the victim has an independent recollection of the perpetrator which is uninfluenced by the pretrial identifications. *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). We find ample support in the record to conclude that the victim had a sufficient, independent recollection of Chief Eagle, which was uninfluenced by pretrial identifications, to make an in-court identification. Specifically, the record indicates that the area where the victim's car was parked was well-lighted and the victim had a sufficient and adequate opportunity to identify Chief Eagle.

Consequently, under these facts and the holding in *Crews, supra,* it is clear that the in-court identification would stand despite the prior improper identification. With an extremely probative in-court identification present in evidence, it cannot be seriously argued under the *Strickland, supra,* standard that the result of the trial would have been different had the motions to suppress been made. The in-court identification under these facts would have been admissible in any event. Consequently, any deficiency on the part of counsel was nonprejudicial.

■ We further observe that it is not altogether certain that a motion to suppress could be permissibly granted under these facts. The mistake in issuing these warrants was the clerk/magistrate's mistake, not the police's mistake. As the United States Supreme Court has said with regard to the exclusionary rule: "The exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard,* 468 U.S. 981, 990, 104 S.Ct. 3424, 3429, 82 L.Ed.2d 737, 745 (1984). In this case the police were simply following the directions of the "Magistrate's Letter." There are no facts available to them which would indicate that they were acting unlawfully. Rather, the

record shows that they were motivated by the good faith belief that they were acting pursuant to a valid warrant. Any mistake that occurred was attributable to the magistrate, not to the police. As such, to exclude the evidence in this case would not serve the fundamental purpose of deterring unlawful searches by the police. Because the element of police deterrence is missing, it is probable that the evidence would have been introduced notwithstanding the invalidity of the "Magistrate's Letter."

Under the *Strickland, supra,* standard a successful ineffective counsel claim requires a showing of prejudice. Under these facts, it is clear that the deficiencies on the part of trial counsel, if any, were not prejudicial. The result of the trial would, in all probability, have been the same even if the motions to suppress were made. This court has consistently stopped short of second-guessing the tactical decisions of counsel. We will simply not attempt to substitute our own theoretical judgment for that of Chief Eagle's counsel. *Jibben v. State,* 343 N.W.2d 788 (S.D.1984); *Grooms v. State,* 320 N.W.2d 149 (S.D. 1982).

Accordingly, we reverse the granting of the writ of habeas corpus.

MORGAN and SABERS, JJ., concur.

WUEST, C.J., concurs specially.

HENDERSON, J., concurs in part and dissents in part.

YOUNG, Circuit Judge, sitting for MILLER, J., disqualified.

WUEST, Chief Justice (special concurrence).

I concur in the result reached by the majority, but believe they have made decisions on legal issues which are unnecessary.

The parties in this case stipulated the trial court (habeas corpus) could render its decision based on the trial transcript of the jury trial for burglary without taking any additional testimony. The trial court (habeas corpus) found "the sole basis for the arrest of Chief Eagle was the "magistrates letter" and "he was subsequently identified as a suspect in a burglary." Testimony of the arresting officer at the trial—which was never controverted—establishes the original arrest was based solely on the "magistrates letter." This testimony further establishes after the petitioner was identified in the police station, petitioner was then charged with burglary before he was placed in the holding area of the jail.

Petitioners arrest for burglary was a subsequent independent occurrence as a result of the fortuitous meeting at the police station. That is the record before us upon which we have to render our decision. Whether the arrest pursuant to the "magistrates letter" was legal or illegal has no relationship to the suppression of the evidence in the burglary case. The arrest or charge in the burglary case was a valid arrest based upon the identification by the victim and hence the evidence obtained as a result of that arrest was not subject to suppression.

In my opinion this case turns on the fact the "magistrate's letter" was not used as a pretext by the police to arrest Chief Eagle for the burglary. Therefore, it is unnecessary to rule on (1) the legality of whether appellee could be imprisoned for nonpayment of a fine; and, (2) apply the good faith exception enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1985) and *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

HENDERSON, Justice (concurring in part and dissenting in part).

The majority reverses the habeas court on the grounds that the State's identification evidence was admissible even if Chief Eagle's counsel had moved to suppress, per *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). It therefore concludes that admission of the evi-

dence created no prejudice to Chief Eagle's defense. In dicta, it argues that the evidence might be saved by application of the "good faith" exception to the exclusionary rule propounded in *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed. 2d 737 (1984). This is unsound. The majority is correct, however, in finding the Clerk's letter to be an unconstitutional intrusion on Chief Eagle's constitutional rights.

Given the unconstitutional nature of the Clerk's letter, which was the sole premise for Chief Eagle's arrest, the State's subsequently acquired evidence is inadmissible. This Court has held an unsigned search warrant to be illegal, drawing an analogy to a judgment void on its face because an inspection of the judgment roll would suffice to expose its invalidity. *State v. Cochrane*, 84 S.D. 527, 173 N.W.2d 495 (1970). The situation here is analogous. The penal provision of Chief Eagle's sentence was dismissed. The Clerk's letter ordering Chief Eagle's confinement for nonpayment of his thirty-five (35) dollar fine, without inquiry into his indigent status, and his subsequent arrest in the vicinity of the "burglary" are matters of constitutional import, as the line of federal cases cited by the majority indicates. We have here no "ministerial error" disposable as merely a technical statutory omission. *See, e.g., State v. Jackson*, 371 N.W.2d 341 (S.D. 1985).

The peculiar facts of this case take it out of the orbit of the *Crews* decision. 445 U.S. 463, 100 S.Ct. 1244. *Crews* reiterated the *Wong Sun* rationale that " '[t]he exclusionary prohibition extends as well to the indirect as the direct products of such [Fourth Amendment] invasions.' " 445 U.S. at 470, 100 S.Ct. at 1249, 63 L.Ed.2d at 545 (quoting *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 453 (1963)). In considering the admissibility of a victim's in-court and stationhouse identifications of the defendant, the United States Supreme Court focused on the fact that, prior to his arrest,

the police, in *Crews*, had information about the defendant's identity, and had reason to suspect him of the crimes the evidence related to. *Crews*, 445 U.S. at 475, 100 S.Ct. at 1252, 63 L.Ed.2d at 548. The victim had already provided the police with a full description. *Id.* The court concluded: "In short, the Fourth Amendment violation in this case yielded nothing of evidentiary value that the police did not already have in their grasp. Rather, respondent's unlawful arrest served merely to link together two extant ingredients in his identification." *Id.* (footnote omitted). Interestingly, the stationhouse identification was held suppressible. *Id.* The Supreme Court emphasized the difference between *Crews*, where the police had prior independent grounds for linking the defendant to the crime, and *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), where such police information was lacking. *Crews*, 445 U.S. at 475–77, 100 S.Ct. at 1252–53, 63 L.Ed.2d at 548–49.

> Had it not been for Davis' illegal detention, however, his prints would not have been obtained and he would never have become a suspect. Here, in contrast, the robbery investigation had already focused on respondent, and the police had independent reasonable grounds to suspect his culpability.

445 U.S. at 476, 100 S.Ct. at 1252, 63 L.Ed. 2d at 549.

Compare *Crews* to the facts of this case. The police had no glimmering of an idea Chief Eagle was responsible for the incident in question. He was taken in for incarceration, solely on the basis of the completely unconstitutional Clerk's letter. He would not have been in the station to be spotted by Mrs. Stone without the illegal arrest. Neither would the police have ever gained access to the "Beanie Wienies" or glove in Chief Eagle's possession, which constituted much of the remaining evidence against him. In short, there would be no evidence left for the State to submit. At the time of Chief Eagle's arrest, the police only knew that a "male Indian," of no

certain description, had been involved. [This raises the possibility the "Clerk's letter" may have been used as a pretext to drag him in. That the letter was signed on March 1, 1984, and the police on the streets looking for a "male Indian" on April 25, 1984, almost two months later, happened to stumble across Chief Eagle, is stretching coincidence to the breaking point. However, I am not basing my special writing on this bracketed supposition.]

*Crews* is simply inapplicable. The reliability of the identifications is not the issue here. The "taint" on it is not removed by any "attenuation" factors:

> As for the stationhouse identification, some decisions are to be found taking the position that this kind of evidence is not to be deemed the fruit of the prior illegal arrest. This result is explained upon reasons which will not withstand analysis, such as that somehow there would inevitably have been a confrontation between victim and defendant on some later occasion, that it was within the realm of possibility that defendant could have been identified without first being taken into custody, or that the arrest is not causally connected with the identification because the witness was merely applying his recollections from the time of the crime. But the correct view under ordinary circumstances is that because a stationhouse lineup is the direct result of the illegal arrest, that identification is unlawful fruit of the poisonous tree. This is not inevitably the case, however, for what is required here is analysis essentially like that used in *Brown v. Illinois* [422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)] in assaying the connection between an illegal arrest and a confession.
>
> *Brown* enumerated three factors: "temporal proximity," "the presence of intervening circumstances," and "the purpose and flagrancy of the official misconduct."

W. LaFave & J. Israel, *Criminal Procedure*, § 9.4(d), at 438 (1985). The facts of this case do not fit the factors in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

In *Brown*, a confession given less than two hours after an illegal arrest was excluded because there was no temporal attenuation of the causal link between the two events. 422 U.S. at 604, 95 S.Ct. at 2262, 45 L.Ed.2d at 427. This applies to the "stationhouse" identification by Mrs. Stone, the "Beanie Wienies," and the glove. There are no intervening circumstances to break the chain. The third factor, the nature of the official misconduct, also weighs in Chief Eagle's favor. The seizure for imprisonment in payment of a fine without inquiry into his obvious material poverty was a flagrant abuse of his rights. Further, the record indicates that the use of Clerk's letters is routine in this state. Neither magistrate nor police paused to consider that the letter, on its face, ordered imprisonment solely to pay off a fine although our statutes (SDCL 23A–27–22; SDCL 23A–27–23) allow no such procedure on these facts, and as the majority notes, the United States Supreme Court has strongly condemned similar practices. *See Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). The Clerk's letter was so deficient, on its face, that it is the equivalent of a warrant lacking indicia of probable cause, which even under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, *reh'g denied*, 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984), a companion case to *Sheppard*, 468 U.S. 981, cannot be "reasonably" relied on by police. *Leon*, 468 U.S. at 925, 104 S.Ct. at 3421–22, 82 L.Ed.2d at 700.

The *Crews* rationale undercuts not only the majority's current opinion, but also our previous decision regarding this unfortunate Indian, *State v. Chief Eagle*, 377 N.W. 2d 141 (S.D.1985), where admission of Mrs. Stone's identification of Chief Eagle was approved. To stress reliability of evidence, 377 N.W.2d at 143, or probability of guilt, *id.*, in cases involving interwoven Fourth

and Sixth Amendment claims is to miss the point:

> The constitutional rights of criminal defendants are granted to the innocent and the guilty alike. Consequently, we decline to hold either that the guarantee of effective assistance of counsel belongs solely to the innocent or that it attaches only to matters affecting the determination of actual guilt.

*Kimmelman v. Morrison,* 477 U.S. 365, ——, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305, 322 (1986). In this case, as none of the State's evidence survives application of the *Crews* rationale, Chief Eagle has clearly met the requirement of both prongs of the *Strickland* test. Failure to move for suppression left him virtually defenseless. His counsel did not use the most decisive weapon in his arsenal. There is no question this omission was prejudicial. *See Luna v. Solem,* 411 N.W.2d 656, 664 (S.D. 1987) (Henderson, J., dissenting) (quoting *Kimmelman,* 477 U.S. at ——, 106 S.Ct. at 2583, 91 L.Ed.2d at 319).

The majority's reliance on *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), is similarly misplaced. Justice White specifically noted, in *Sheppard,* that the case did not involve an instance where " 'it is plainly evident that a magistrate or judge had no business issuing a warrant.' " 468 U.S. at 990, 104 S.Ct. at 3429, 82 L.Ed.2d at 745 n. 7 (citation omitted). Clearly, *Sheppard* is not on point. As argued above, the Clerk's letter, on these facts, cannot justify police action taken in reliance on it, even under *Leon.* In addition, there is no good reason to allow the State to even raise the "good faith" exception to the exclusionary rule on appeal. We have repeatedly held that the "plain error rule," as codified in SDCL 23A-44-15, is only to be applied with caution, and in exceptional circumstances. *State v. Brammer,* 304 N.W.2d 111 (S.D. 1981). *See also State v. Dornbusch,* 384 N.W.2d 682 (S.D.1986); *State v. West,* 344 N.W.2d 502 (S.D.1984). The same is true of SDCL 19-9-6, the civil equivalent of SDCL 23A-44-15. *State v. Ellefson,* 287 N.W.2d 493 (S.D.1980). What exceptional circumstances exist to justify invocation of the rule here? The State's interests in providing restitution to crime victims, rehabilitating the prisoner, protecting society by removing him from temptation, and deterring future lawbreaking were all held insufficient to outweigh the indigent's right to freedom where his nonpayment of a fine is not determined to be willful. *Bearden v. Georgia,* 461 U.S. at 670–72, 103 S.Ct. at 2072, 76 L.Ed.2d at 231–33. This indicates the gravity of the infringement made on Chief Eagle's rights. The State can offer nothing to match it. Allowing admission of evidence seized on the authority of the "Clerk's letter" on the basis of "good faith" is an affront to justice, Chief Eagle, and other indigents who may have been, or will be, hauled into jail unconstitutionally. His initial arrest violated the Equal Protection Clause, *Bearden, id.,* and the Fourth Amendment. His counsel's failure to request suppression violated the Sixth Amendment. On top of all this, Chief Eagle is to go to jail for five years for the burgling of part of a banana, a can of beans, and some candy from an unlocked car. The "exceptional circumstances" of this case demand that this Court deny the State's "plain error" argument regarding "good faith."

In summary, the habeas corpus court was correct in vacating petitioner's judgment of conviction. The Clerk's letter was invalid for any purpose. As the warrantless arrest of a person is " 'quintessentially a seizure,' " required by the Fourth Amendment to be reasonable, *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639, 650 (1980) (citation omitted), and no probable cause for the arrest of Chief Eagle existed without the letter, we should affirm.

Per the 1980 United States Department of Commerce, Bureau of the Census, there were 690,768 people in South Dakota; 44,-948 were American Indians; this comprises 7% of the total population of South Dakota.

Yet, it is noted by this Justice that per the Fall 1987 writing of Dean Hinders, Associate Warden, South Dakota State Penitentiary, Sioux Falls, South Dakota, as reflected in "The Informer," South Dakota Corrections Association authorized periodical, the American Indian comprises 23% of the inmates of the State Penitentiary. Chief Eagle, a Native American, should not be returned to the South Dakota State Penitentiary under the law which I have written aforesaid.